**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

**PITTSBURGH**

| | | |
|---|---|---|
| SHARONE WALTER, | ) | |
| | ) | |
| Plaintiff, | ) | 2:22-CV-01213-MJH |
| | ) | |
| vs. | ) | |
| | ) | |
| DENNIS MCDONAUGH, SECRETARY, | ) | |
| DEPARTMENT OF VETERANS AFFAIRS; | ) | |
| | | |
| Defendant, | | |

**<u>MEMORANDUM OPINION</u>**

On August 24, 2022, Plaintiff, Sharone Walter, filed the present lawsuit against

Defendant Dennis McDonaugh. (ECF No. 1). On January 13, 2023, Plaintiff filed an Amended

Complaint. (ECF No. 6). Plaintiff brings a retaliation claim and a sex-related discrimination and

hostile work environment claim against Defendant under the Civil Rights Act of 1964 ("Title

VII"). (*Id.*). Plaintiff also brings a claim against Defendant under the Age Discrimination in

Employment Act of 1967 ("ADEA"). On March 9, 2023, Defendant filed an Answer to the

Amended Complaint. (ECF No. 8). On January 10, 2024, Defendant filed a Motion for Summary

Judgment, accompanying brief, and Concise Statement of Material Facts. (ECF Nos. 26, 27, &

28). On February 23, 2024, Plaintiff filed a Counter Statement of Material Facts and a Brief in

Opposition to Defendant's Motion for Summary Judgment. (ECF No. 32 & 33). On March 8,

2024, Defendant filed a Motion to Strike Plaintiff's Concise Statement of Material Facts and

accompanying brief. (ECF Nos. 35 & 36). Plaintiff did not respond to Defendant's Motion to

Strike. The issues are fully briefed and ready for disposition. For the following reasons,

Defendant's Motion for Summary Judgment will be granted as to all claims and counts.

Defendant's Motion to Strike Plaintiff's Counter Statement of Material Facts will also be granted.

## I.     Statement of Facts

Facts Related to Plaintiff's Termination

Plaintiff, Sharone Walter, was an employee of the Pittsburgh VA Health Care System ("the VA"), where she worked as a Physician Assistant in the Emergency Department. (ECF No. 29-1, at 34-35). Matthew McKinsey, Supervisory Physician Assistant, and Adrian D'Amico, Director of the Emergency Department, were Plaintiff's supervisors. (*Id.* at 35). Starting on August 18, 2008, Plaintiff had previously worked for the VA, as a Physician Assistant in a different department, but was removed from her employment on December 9, 2017. (*Id.* at 28, at ¶ 3); (ECF No. 29-2). Plaintiff grieved her removal on December 18, 2019, which was denied on December 21, 2017. (ECF Nos. 29-3 & 29-4). The grievance was resolved through various methods, including a June 4, 2019 settlement agreement as well as arbitration procedures conducted on July 25, 2019, which resulted in Plaintiff's reinstatement pursuant to a Last Chance Agreement ("LCA"), signed by Plaintiff on July 25, 2019. (ECF Nos. 29-4 & 29-5). The LCA provided that Plaintiff agreed to "maintain satisfactory attendance, conduct, performance, and working habits." (*Id.*). The LCA further provided that the "employee understands that one instance of absence without official leave (AWOL) or any other infraction for which disciplinary action would normally be initiated, at any level, shall be cause for reinstatement of the action to remove her. The removal will be immediate, without additional due process. VAPHS may, at its own discretion, choose not to issue disciplinary action." (*Id.*).

On September 3, 2019, Plaintiff returned to work at the VA, and she attended employee orientation on September 3 and 4, 2019. (ECF No. 29-1, at 34-35). On September 5, 2019,

Plaintiff began working at the VA's Emergency Department. (*Id.* at 40); (ECF No. 29-6). Plaintiff was scheduled to work the 10:00 a.m. to 6:30 p.m. shift that day. (ECF No. 29-6). On September 5, 6, 9, 11, and 12, 2019, Plaintiff was late to work. (ECF No. 29-1, at 45-46); (ECF No. 29-6). Further, on September 12, 2019, another employee observed that Plaintiff took an extra fifteen minutes on her lunch break. (*Id.*); (ECF No. 29-7). During a fact-finding meeting on September 19, 2019, Plaintiff provided various explanations why she was late to work on the above date, including: traffic, "inquir[ing] about parking" from VA police, and acquiring paperwork from her physician for credentialing. (ECF No. 29-6). Following the September 19, 2024, fact finding meeting, Plaintiff was provided the opportunity to file a Report of Contact ("ROC") to offer any additional information; Plaintiff did not do so. (ECF No. 29-1, at 51-53); (ECF No. 29-8). Further, on October 4, 2019, Matthew McKinsey held a second fact-finding meeting, because Plaintiff was observed arriving late to work on October 2, 2019. (ECF No. 29-1, at 36-37); (ECF No. 29-13). On October 21, 2019, the VA sent a letter to Plaintiff, terminating her employment, effective October 30, 2019. (ECF No. 29-14).

On September 24, 2019, Plaintiff emailed Mr. McKinsey, informing him that in 2017, she had made an EEOC Complaint on the same day she had submitted her 2017 grievance. (ECF No. 29-10, at 3). Mr. McKinsey was previously unaware of any EEOC action brought by Plaintiff until he received Plaintiff's September 24, 2019 email. (*Id.*). On October 2, 2019, Adrian D'Amico, sent a Memorandum to Donald Koenig, Director of the VAHC in Pittsburgh, recommending that Plaintiff be terminated for violating her LCA. (ECF No. 29-11). On October 2, 2019, Plaintiff filed another EEOC Complaint against Defendant, alleging she was subjected to sex-related discrimination and a hostile work environment. (ECF No. 6, at 12). Dr. D'Amico denies having any knowledge of Plaintiff's prior EEOC actions. (ECF No. 29-12). In her

deposition, Plaintiff stated that she had knowledge that Dr. D'Amico had any evidence of her

EEOC actions. (ECF No. 29-1).

Facts Related to Plaintiff's Sex-Based Title VII Discrimination Claims

During Plaintiff's employment at the VA, she had a conversation with Carmella Dearmon,

Business Manager of the Emergency Department, regarding her work attire. (ECF No. 29-1, at

85, 91, & 107). In Plaintiff's deposition she described the conversation as follows:

> A. It was very awkward. We were sitting alone in the conference room. She
> requested that I come in and speak with her. She kind of embarrassedly handed me
> a copy of the dress code and said, "You're not dressing appropriately. People can
> see cleavage." She commented that my pants were inappropriate. And said, "Oh,
> okay, here's the dress code." And it ended rather abruptly.
>
> Q. And at that point, did you -- did you tell -- did you respond at all?
>
> A. I did say to her, "Well, what I am wearing now is what I have been wearing.
> Do you feel that this is inappropriate?" And she touched my pant leg to see if my
> pants were jeans or not. And that was basically the extent of it. She just said,
> "Okay." I felt that this was not her doing, this was something she was tasked with
> doing, and just wanted to get it over with so that she could report back that she had
> taken care of the issue.

(*Id.* at 88). Following this discussion, Ms. Dearmon sent an email to Mr. McKinsey

detailing her conversation with Plaintiff. The email's contents were as follows:

> I met with Sharone Walter on or about 1300 on September 10, 2019 about the dress
> code policy. I went over the highlighted items in dress code policy. We discussed
> if her current pants were jeans, I did let her know that they were and advised not to
> wear them. She stated their like khaki pants and I explained the stitching is just like
> the make of jeans. We discussed about wearing undergarments under shirts or a
> tank top, she stated okay. I also offered her some scrubs to wear for work. We also
> discussed her hair being pulled and secured when working in direct patient care.
> She received the discussion very well and thank [sic] me for going over policy with
> her.

(ECF No. 29-15). Plaintiff cites this meeting for the basis of her sex-discrimination claims.

## II.      Relevant Legal Standards

According to Federal Rule of Civil Procedure 56, a court must grant summary judgment where the moving party "shows that there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). For a dispute to be genuine, there must be "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party." *Moody v. Atl. City Bd. of Educ.*, 870 F.3d 206, 213 (3d Cir. 2017) (internal quotations omitted). Additionally, for a factual dispute to be material, it must have an effect on the outcome of the suit. *Id.* In reviewing and evaluating the evidence to rule upon a motion for summary judgment, the court must "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the" non-moving party. *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014) (internal quotations omitted). However, where "the non-moving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,'" the moving party is entitled to judgment as a matter of law. *Moody*, 870 F.3d at 213 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

"The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "Discredited testimony is not normally considered a sufficient basis for drawing a contrary conclusion.  Instead, the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Id.* at 256-57 (internal citation omitted). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted). Judges are not "required to submit a question to a jury merely

because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such a character that it would warrant the jury in finding a verdict in favor of the party." *Id.* at 251 (internal citation omitted).

### III.    Discussion

### A.  Motion to Strike Plaintiff's Counter Statement of Material Fact

Defendant argues that Plaintiff failed to comply with Local Rule 56.1 within her Counter Statement of Material Fact ("CSOMF"); and therefore, Plaintiff's CSMOF should be stricken in its entirety, and Defendant's Statement of Material Facts ("SOMF") should be admitted. (ECF No. 36, at 2). Plaintiff did not respond to Defendant's Motion to Strike.

The Court agrees with Defendant's argument within its Motion to Strike Plaintiff's CSOMF. Plaintiff's CSOMF fails to admit or deny various facts set forth in Defendants SOMF, in violation of Local Rule 56.C.1(a).[1] Plaintiff also asserts many new facts in her CSOMF, but does not cite to any record evidence, which violates Local Rules 56.1(b) and 56C.1(c). Additionally, Plaintiff makes many legal arguments within her CSMOF but does not cite to any record evidence as support. Plaintiff's CSMOF clearly violates Local Rule 56.1(c).

The Federal Rules of Civil Procedure and the Local Rules permit facts to be admitted where they are not properly opposed. *See* Fed. R. Civ. P. 56(e) ("If a party fails...to properly address another party's assertion of fact as required by Rule 56(c), the court may:...grant summary judgment if the motion and supporting materials -- including the facts considered undisputed –

---

[1] Local Rule 56.1.C requires that the party opposing summary judgment must respond to each numbered paragraph in the moving party's Concise Statement of Material Facts by: (a) admitting or denying whether each fact contained in the moving party's Concise Statement of Material Facts is undisputed and/or material; (b) setting forth the basis for the denial if any fact contained in the moving party's Concise Statement of Material Facts is not admitted in its entirety with appropriate reference to the record; and (c) setting forth in separately numbered paragraphs any other material facts that are allegedly at issue, and/or that the opposing party asserts are necessary for the Court to determine the motion for summary judgment. LCvR 56C.1.(a). – 56C.1.(c).

show that the movant is entitled to it."); *See also* LCvR 56(E) ("Alleged material facts set forth in the moving party's Concise Statement of Material Facts...which are claimed to be undisputed, will for the purposes of deciding the motion for summary judgment be deemed admitted unless specifically denied or otherwise controverted by a separate concise statement of the opposing party."). Because Plaintiff failed to properly comply with Local Rules 56.1.C, Defendant's SOMF is admitted and Plaintiff's CSOMF is stricken. In lieu of having Plaintiff attempt to remedy her mistakes, the Court has independently reviewed the record evidence and, for the reasons stated below, finds that Plaintiff has failed to produce evidence to establish a genuine issue of material facts as to any of her claims.

**B.  Title VII Retaliation Claim**

Plaintiff brings a Title VII claim for retaliation against Defendant, alleging that she was retaliated against for grieving her termination in December 2017, for filling an EEOC Complaint in December 2017 ("December 2017 EEOC Complaint"), and for filing a second EEOC Complaint on October 2, 2019 ("October 2019 EEOC Complaint"). (ECF No. 6, at 3, 12). Defendant argues that Plaintiff fails to establish a prima facie case for retaliation under Title VII, because Plaintiff did not engage in a protected activity or establish a causal connection between any protected activity and her termination. (ECF No. 27, at 7-12). Defendant also argues that they provided a legitimate basis for terminating Plaintiff, which Plaintiff fails to prove was pretextual. (*Id.* at 12-19). Plaintiff argues that the evidence shows that a genuine issue of material fact exists related to this claim. (ECF No. 33, at 1-3).

Title VII prohibits discrimination against any individual "because of such individual's race, color, religion, sex, or national origin." 42 U.S.C § 2000e-2(a)(1). Title VII also prohibits an employer from discriminating against an employee who has opposed an employer's

discriminatory conduct or "has made a charge, testified, assisted, or participated in any manner

in an investigation, proceeding, or hearing" related to an employer's discriminatory conduct. 42

U.S.C. § 2000e-3(a). To establish a prima facie case for Title VII retaliation, a plaintiff must

show that (1) she engaged in conduct protected by Title VII; (2) her employer took adverse

action against her; and (3) a causal link existed between her protected conduct and the

employer's adverse action. *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016). In

a retaliation claim, a plaintiff has the ultimate burden to prove that "his or her protected activity

was a but-for cause of the alleged adverse employment action by the employer." *Univ. of Texas

Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013); *Collins v. Kimberly-Clark Penn., LLC*, 708

F. App'x 48, 54 (3d Cir. 2017) ("To prove causation at the pretext stage, the plaintiff must show

that she would not have suffered an adverse employment action 'but for' her protected

activity."). "The 'anti-retaliation' provision of Title VII protects those who participate in certain

Title VII proceedings and those who oppose discrimination made unlawful by Title VII.

*Paradisis v. Englewood Hosp. Med. Ctr.,* 680 F. App'x 131, 138 (3d Cir. 2017).

i.     Protected Activities

Plaintiff asserts in her Amended Complaint that she was retaliated against by Defendant,

because she engaged in three protected activities. The first alleged protected activity was a

grievance she submitted in 2017, which was arbitrated and resulted in her reinstatement under

the LCA. (ECF No. 6, at 3). The second protected activity, the December 2017 EEOC

Complaint, was submitted at the same time. Plaintiff testified in her deposition that the grievance

and December 2017 EEOC Complaint were related to a "health condition." (ECF No. 29-1, at

95). Further, in her 2017 Grievance Letter, Plaintiff stated that her original termination was

"solely because of her disability." (ECF No. 29-3). Health conditions and disabilities are not one

of the protected activities enumerated under Title VII. *See* 42 U.S.C § 2000e-2(a)(1). Plaintiff

did not bring any retaliation claims under the Rehabilitation Act of 1973, nor can her claims be

construed to be such, because she is represented by counsel, and not pro se. Plaintiff cannot rely

on an activity related to disability as the basis for a Title VII retaliation claim. *See Paradisis v.*

*Englewood Hosp. Med. Ctr.*, 680 F. App'x 131, 138 (3d Cir. 2017) (finding that prior grievance

that "made no mention of any type of discrimination protected by Title VII . . . does not

constitute protected activity"). Thus, Plaintiff's 2017 grievance and December 2017 EEOC

Complaint are not protected activities under Title VII.

The third alleged protected activity was the October 2019 EEOC Complaint. (ECF No. 6, at

12). The Court recognizes that Plaintiff stated in her deposition that her termination was based

only upon the 2017 grievance and the December 2017 EEOC Complaint; however, Plaintiff

mentions the October 2019 EEOC Complaint in her Amended Complaint, as such, for

completeness, the October 2019 EEOC Complaint will be addressed and considered as a

protected activity in this case. Sex-based complaints are protected activities under Title VII.

Thus, Plaintiff's October 2019 EEOC Complaint qualifies as a protected activity.

    ii.   <u>Causal Connection</u>

To establish a prima facie case of retaliation under Title VII, the Plaintiff must establish that,

but-for her Second EEOC Complaint, she would not have been terminated. Plaintiff fails to

establish or cite to any record evidence to show that there is a genuine issue of material fact

related to such a causal connection. Mr. McKinsey began investigating Plaintiff's late arrivals to

work and had conducted a fact-finding meeting on September 19, 2019. In addition, on October

2, 2019, Dr. D'Amico had recommended Plaintiff be terminated. The events and steps leading to

Plaintiff's termination began weeks before October 21, 2019, the date in which management at

the VA was informed of the October 2019 EEOC Complaint. Plaintiff's termination could not have been based on this alleged protected activity. *See Power v. Lockheed Martin Corp.*, 419 F. Supp. 3d 878, 898 (E.D. Pa. 2020) ("Because Mr. Power had not yet engaged in protected activity at the time that Mr. Downing, Ms. Novak, and Ms. Walker discussed placing him on the PIP, their resulting decision to do so could not have been motivated by retaliatory animus."); *Gale v. UPMC Horizon*, No. 12-00617, 2013 WL 5534238, at *7 (W.D. Pa. Oct. 7, 2013) (granting employer's motion for summary judgment after finding that the "wheels of Plaintiff's termination had already been set in motion by the time" he engaged in protected activity; and thus, plaintiff "cannot base his retaliation claim on conduct that took place in the midst of that inquiry"). Thus, Plaintiff does not establish sufficient facts on the record to show that a genuine issue of material facts exists that her October 2019 EEOC Complaint was the reason she was terminated from the VA. Thus, Plaintiff's claim for retaliation fails and Defendant's Motion for Summary Judgment will be granted.

As regards Plaintiff's 2017 grievance and December 2017 EEOC Complaint, even if such qualified as a retaliation claim under Title VII, Plaintiff fails to establish any causal connection between such alleged protected activities and her termination. Plaintiff admitted in her deposition that she never heard that she was terminated because of her 2017 EEOC Complaint. (ECF No. 29-1, at 95). Further, the record reflects that Mr. McKinsey and Dr. D'Amico were unaware of Plaintiff's 2017 EEOC Charge and grievance before Plaintiff was investigated and her termination was recommended. Mr. McKinsey conducted a fact-finding meeting on September 19, 2019 and provided Plaintiff with an opportunity to provide a ROC by September 23, 2019, which she failed to do. Mr. McKinsey stated in his affidavit that he was unaware that Plaintiff had submitted the December 2017 EEOC Complaint, until she emailed him on September 24,

2019, informing him of it. (ECF No. 29-10, at 3). Dr. D'Amico recommended that Plaintiff be

terminated for violating her LCA on October 2, 2019. (ECF No. 29-11). In his affidavit, Dr.

D'Amico stated that, at the time of his recommendation to terminate Plaintiff, he was not aware

of any protected activity. (ECF No. 29-12). Further, in Plaintiff's deposition, she admitted that

she had no evidence that Dr. D'Amico had knowledge of her EEOC Complaint when he

recommended that she be terminated. As Mr. McKinsey and Dr. D'Amico did not have

knowledge of Plaintiff's alleged protected activities, their decision to recommend termination

could not have been retaliation for Plaintiff's 2017 grievance or December 2017 EEOC

Complaint. *See Ambrose v. Twp. of Robinson*, 303 F.3d 488, 493 (3d Cir. 2002) (explaining that

"[i]t is only intuitive that for protected conduct to be a substantial or motiving factor in a

decision, the decisionmakers must be aware of the protected conduct").

As such, Plaintiff fails to establish a genuine issue of material fact that any of the alleged

protected activities were causally connected to her termination from the VA. Plaintiff fails to

establish a prima facie case for retaliation under Title VII. Defendant's Motion for Summary

Judgment, as to Plaintiff's Title VII retaliation claims, will be granted.

iii.   Legitimate Non-Discriminatory Reason for Termination and Pretext

Defendant further argues that, even if Plaintiff established a prima facie case of retaliation

under Title VII, Plaintiff was fired for a legitimate non-discriminatory reason. In addition,

Plaintiff did not produce any evidence to establish any genuine issue of material fact to refute

Defendant's legitimate non-discriminatory reason for her termination. (ECF No. 27, at 12-20).

Plaintiff does not respond to these arguments in her Brief in Opposition.

After a review of the record, the Court concludes that Plaintiff also fails to establish a

genuine issue of material fact that Defendant's legitimate non-discriminatory reason for

11

Plaintiff's termination was pretextual. As such, even if Plaintiff had established a prima facie

case for retaliation under Title VII, which we have found she did not, Defendant's Motion for

Summary Judgment would be granted, because Plaintiff fails to refute Defendant's legitimate

non-discriminatory reason for her termination.

### C. Title VII Sex Discrimination and Hostile Work Environment Claims

Plaintiff brings Title VII sex-based discrimination and hostile work environment claims

against Defendant. Defendant argues that Plaintiff fails to establish a genuine issue of material

fact that Plaintiff was subjected to sex-based discrimination and hostile work environment. (ECF

No. 27, at 20-23).

To establish a hostile work environment claim, Plaintiff must show "that her workplace was

'permeated with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or

pervasive to alter the conditions of [her] employment and create an abusive working

environment.'" *Peace-Wickham v. Walls*, 409 F. App'x 512, 519 (3d Cir. 2010) (quoting *Nat'l*

*R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002) (quotations omitted)). "[O]ffhanded

comments and isolated incidents (unless extremely serious) are not sufficient to sustain a hostile

work environment claim. Rather, the conduct must be extreme to amount to a change in the

terms and conditions of employment." *Caver v. City of Trenton*, 420 F.3d 243, 262 (3d Cir.

2005) (internal quotations and citations omitted).

Offensive conduct or conduct that renders the employee's work life unpleasant or

uncomfortable is not enough. *McClendon v. Dougherty*, 2011 WL 677481 (W.D. Pa. Feb. 15,

2011). "The mere utterance of an . . . epithet which engenders offensive feelings in an employee,

is not sufficiently significant as to affect [sic] the conditions of employment and thereby violate

Title VII." *Id.* (citations omitted). Likewise, "[a]llegations properly described as petty slights,

minor annoyances, and simple lack of good manners do not suffice to establish an actionable hostile work environment." *Yarnall v. Phila. School Dist.*, 57 F. Supp. 3d 410, 433 (E.D. Pa. 2014) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).

In the present matter, Plaintiff bases her sex discrimination and hostile work environment claim on the conversation she had with Ms. Dearmon, about her work attire, where she was informed about the VA dress code and her apparent violations of it. Such an occurrence is not something that is severe or pervasive enough to establish a hostile work environment. Instead, it falls more in the realm of a petty slight or annoyance. Single instance discussions of the dress code are not enough to establish a hostile work environment. *See Fogleman v. Greater Hazleton Health Alliance*, 112 Fed. Appx. 581, 584 (3d Cir. 2004) (the Court found that employee did not have an objectively reasonable belief that she was subjected to sexual harassment, or a hostile work environment claim based upon comments made about her attire while discussing a dress code). Thus, one conversation regarding Plaintiff's dress is not severe or pervasive enough to establish a hostile work environment.

Further, Plaintiff fails to point to or provide any record evidence that Mr. McKinsey or Ms. Dearmon acted with discriminatory animus based upon Plaintiff's sex. In her deposition, Plaintiff stated that she never heard that she was targeted in any way because of her sex. (ECF No. 29-1, at 90). Thus, Plaintiff fails to establish a genuine issue of material fact that she was subject to sex-based discrimination or hostile work environment. Defendant's Motion for Summary Judgment, as to Plaintiff's sex-based discrimination and hostile work environment claims, will be granted.

**D.  Age Discrimination Claim**

In the "Relief Requested" section of her Amended Complaint, Plaintiff states that Defendant violated the Age Discrimination in Employment Act of 1967 ("ADEA"). (ECF No. 6, at 15). However, as Defendant points out in its Brief in Support for Motion for Summary Judgment, Plaintiff does not mention such a claim anywhere else in the Amended Complaint, nor does she provide any evidence on the record to support such a claim. As such, Defendant's Motion for Summary Judgment, related to Plaintiff's apparent ADEA claim, will be granted.

IV.   **Conclusion**

For these reasons, Defendants Motion to Strike Plaintiff's Counter Statement of Material Facts will be granted. Further, Defendant's Motion for Summary Judgment will be granted in full. Judgement will be entered in favor of Defendant as to all claims and counts within the Amended Complaint. A separate order to follow.

DATE: 9/3/2024

Marilyn J. Horan
United States District Judge

14